UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| PATRICIA A. MOCKBEE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 06-2186 |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

# O R D E R

In March 2006, Administrative Law Judge (hereinafter "ALJ") James Gildea denied Plaintiff Patricia Mockbee's application for social security disability insurance benefits. The ALJ based his decision on a finding that Plaintiff was able to perform her past relevant work as a can filler and closing machine tender.[1]

In September 2006, Plaintiff filed a Complaint (#1) against Defendant Jo Anne Barnhart,[2] the Commissioner of Social Security, seeking judicial review of the ALJ's decision to deny social security benefits. In May 2007, Plaintiff filed a Motion for Summary Judgment (#12). In July 2007, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#17). After reviewing the administrative record and the parties' memoranda, this Court **DENIES** Plaintiff's Motion for Summary Judgment **(#12)**.

---

[1]The ALJ incorrectly referred to this job as "can filler and cleaning machine tender." Plaintiff has explained that the correct title is "can filler and closing machine tender." DOT 529.686-282. *See* R. 144.

[2]Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, we have substituted Michael Astrue for Jo Anne Barnhart as the defendant in this suit. FED. R. CIV. P. 25(d)(1).

## I.  Background
### A.  Procedural Background

Plaintiff filed an application for social security benefits in July 2003, alleging that she became disabled in October or November 2000 based on problems with her back, leg, and left shoulder.  The Social Security Administration (hereinafter "SSA") denied Plaintiff's application initially and upon reconsideration.  Plaintiff timely requested a hearing, which the ALJ held in March 2006.  At the hearing, Plaintiff, Plaintiff's husband Gary Mockbee, and vocational expert James Lanier testified.  Plaintiff was represented by counsel at the hearing.  In March 2006, the ALJ denied benefits to Plaintiff.  In September 2006, the Appeals Council denied Plaintiff's request for review of this decision, making the ALJ's decision the Commissioner's final decision.  In September 2006, Plaintiff appealed this decision by filing a complaint with this Court pursuant to 42 U.S.C. § 405(g).

### B.  Plaintiff's Background

Plaintiff worked as a laundry worker (1993), cap pusher (1993-94), packer (1994-96), and valve dropper (1996-2000).  (R. 107.)  Her last job, as valve dropper, lasted from 1996 until 2000.  According to Plaintiff's own report, the job of valve dropper required Plaintiff to use a machine to drop valves into aerosol cans and make sure the machines do not jam, write daily reports, and lift boxes of valves and carry them about six feet.  (R. 100, Report dated December 2003.)  In December 2003, Plaintiff told a social security adjudicator that the boxes weighed about twenty-five to thirty pounds and "[I] never lifted the boxes by myself.  I never had to lift 50 pounds."  (R. 100.)

Based on the medical record, Dr. Thomas Halloran first saw Plaintiff in January 2000 for her back and left leg pain.  Plaintiff reported that her back had hurt for a long time, but it feels worse with prolonged standing which her job requires.  Dr. Halloran assessed Plaintiff with "[p]robable left sciatica, although her back pain suggests that she may have some lumbar strain or degenerative disc disease as well."  (R. 157.)  He prescribed Aleve.

In July 2000, a CT scan of Plaintiff's back showed a bulging disc at L4-5 associated with interspace narrowing, degenerative bony spurring, and vacuum disc phenomenon. The radiologist's impression was severe degenerative disc disease at L4-5 with a broad-based posterior bulge that could compromise the existing nerve roots. (R. 160.) In August 2000, Plaintiff received an epidural steroid injection at L4-L5 for the pain. (R. 155.)

In September 2000, Plaintiff returned to Dr. Halloran for a check after her epidural. She told Dr. Halloran's physician's assistant that she felt about fifty percent improved. The clinic notes state that, based on Plaintiff's report of improvement, she might benefit from a second epidural and the physician's assistant would set it up. (R. 154.) The record shows that Plaintiff asked to delay scheduling the second epidural until mid-October "when things at work change." (R. 152.) However, this second epidural was never performed.

In December 2001, an x-ray was taken after Plaintiff was diagnosed with kidney stones. The radiologist noted degenerative changes of the lower lumbar spine. (R. 164.)

In June 2003, Plaintiff saw Dr. Halloran for left shoulder pain. (R. 147.) The clinic notes state that she had no tenderness with palpation around her left shoulder, but it hurt when she reached in front or behind her back and was very painful if she tried to raise her arm up over shoulder level. (R. 147.) X-rays of her shoulder showed some spurring on the acromium and mild hypertrophic change of the left AC joint. The radiologist's impression was degenerative joint disease related to the acromioclavicular joint and acromion which "can be associated with impingement." (R. 159.) Following the x-ray, Dr. Halloran assessed her with left shoulder pain, likely secondary to bursitis rather than impingement. (R. 147.) He prescribed medication and told her to apply heat to the shoulder two to three times a day for twenty to thirty minutes.

In September 2003, Dr. S. Raju of the Danville Pain Management & Rehabilitation Institute examined Plaintiff. He noted that she has a history of chronic low back pain for the past forty years. She assessed her low back pain as 5/10 on a 0-10 point scale with occasional radiation down her right leg. She also complained of left shoulder pain for the past six months,

rated as 2/10. She reported that any activity exacerbated her back pain and lying down made it feel better. She had physical therapy for her back pain in the past. (R. 174.) Her medications included Inderal, enalapril, premarin, and synthroid. The doctor observed constant shaking of her head due to neck tremors. He stated that she had good active range of motion for both upper and lower arms and legs and no limitation of motion of any spinal segment. (R. 176.) Her left shoulder abduction was up to ninety degrees. She was tender to palpation in the right lower lumbar paraspinal muscle areas. (R. 176.)

In October 2003, a state agency doctor completed a physical RFC assessment and in March 2004, another doctor affirmed the assessment. (R. 189.) The assessment indicated that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. She had no limits on her ability to push and pull other than the weight limits. She was limited to only occasional climbing of ramp, stairs, ladder, rope, or scaffold. She had some limits in her ability to reach (including overhead) with her left arm, but no limits as to her right arm. The assessment referred to Dr. Raju's report and noted that he had not included any restrictions on Plaintiff's fine and gross manipulation with both hands or on her ability to perform work-related activities such as sitting, standing, walking, hearing, or speaking. The assessment concluded that Plaintiff was capable of light work activity. (R. 183-89.)

In November 2003, Dr. Manjit Sihota, a state agency medical consultant, reviewed records of Plaintiff's shoulder impairment, noting that Dr. Halloran had diagnosed it as bursitis rather than impingement syndrome. He opined that this type of impairment is not expected to last for twelve months. (R. 178.)

In February 2004, Plaintiff consulted Dr. Halloran complaining of discomfort in her back and radiating down her right leg. (R. 190.) Dr. Halloran noted that this was reminiscent of the problem she had in 2000 when she was still working. He stated that she had an epidural at that time "which did seem to help her, according to contemporaneous notes, by about 50%." (R. 190.) He assessed her as having a relapse of sciatica on the right, along with known severe

degenerative disc disease. A subsequent CT scan indicated degenerative disc changes at L4-5 and L5-S1 and mild disc space narrowing at L5-S1, but did not indicate any change compared to 2000. (R. 193.)

In June 2004, Maleah Sjoken, a nurse practitioner, performed an annual exam and noted that Plaintiff had tremors which started when she was approximately thirty-seven years old. She has had testing but no diagnosis has been made as to the cause of the tremors. (R. 199.) Plaintiff told Ms. Sjoken that Inderal helps somewhat. (R. 200.) In July 2005, Diane Koch, a nurse practitioner, performed an annual exam and noted that Plaintiff had a tic, thyroid disease, hypertension, and tremors. (R. 194.)

Plaintiff also sees Dennis Price, a physician's assistant, about every six months to get refills on medication for her high blood pressure, thyroid problems, and tremors. In July 2004, his clinic notes indicate that Plaintiff complained of hip pain for the last three days and that she had full hip motion and no tenderness on examination. (R. 205.)

### C. The Hearing Before the ALJ

The ALJ held a hearing in March 2006, during which Plaintiff, her husband Gary Mockbee, and vocational expert (hereinafter "VE") James Lanier testified.

Plaintiff was fifty-eight years old on her claimed onset date of October or November 2002, and sixty-two at the time of the ALJ's decision. Plaintiff has completed the eighth grade and has been a laundry worker, a cannery worker, and a can filler and closing machine tender. At the time of the hearing, Plaintiff had not worked for six or seven years. She is right-handed.

Plaintiff testified that she sees two doctors, Dr. Price[3], her family doctor, and Dr. Halloran, whom she consulted four times during the last seven years for the pain she

---

[3] Dennis Price appears to be a physician's assistant. *See* R. 203-5.

experiences in the lower part of her spine and across her hip down her right leg. (R. 222.) She last saw him about three years ago. In 2000, Dr. Halloran gave Plaintiff an epidural injection and also prescribed medication. Plaintiff testified that neither the epidural nor the medication worked on her back, so she has been taking Ibuprofen. (R. 221.) She also takes 800 milligrams of Motrin every six hours and has been doing that for about seven years. Plaintiff testified that she experiences intense pain about three or four times a week. When that happens, she will lie down and use a heating pad.

Plaintiff testified that she also has neck pain from her tremors and left shoulder pain. She has had the shoulder pain for about ten years; sometimes it gets intense and goes down to her fingers. She testified that the medication from Dr. Halloran helps with the shoulder pain. (R. 233.) When she is having a fair day, she is able to do housework, rinse the dishes, and fold clothes. Most of the time, she lies on the couch watching TV. She might walk in the yard. (R. 224.) Her daughter does most of the housework and her husband cooks. (R. 234-35.)

Plaintiff has a driver's license and she drives once a week to get groceries. She sometimes visits her daughter who lives twelve miles away. She has two grandchildren, ages two and four, and her daughter brings them to visit once a week. (R. 225-26.)

Plaintiff sees her regular medical provider (Mr. Price) about every six months to get prescriptions for her blood pressure, thyroid, and tremors. The tremors affect her neck and make her head shake. As a result, she cannot read any more. She takes Inderal for her tremors. She testified that she can stand or walk for about half an hour at the most, and then her lower back and leg hurt. (R. 236.) She testified that lifting even a gallon of milk bothers her back. (R. 237.) Sometimes it bothers her to walk and she will limp. (R. 238.)

Plaintiff's husband Gary Mockbee testified that Plaintiff experiences a lot of back pain and tremors and she does not cook or do housework. (R. 240.) When they go grocery shopping, she has trouble walking and uses the cart for a cane. She sometimes drags her leg when she walks.

The VE, Dr. Lanier, testified that he had reviewed the exhibits in the file regarding Plaintiff's past work and he heard Plaintiff and Mr. Mockbee testify at the hearing. The VE testified that Plaintiff's past work included (in DOT terminology) cannery worker (DOT 529.686-014), can filling and closing machine tender (DOT 529.685-282), and tin can labor (DOT 709.686-010).

The ALJ asked Dr. Lanier to disregard any information he had gathered from reading the file or listening to the testimony, other than what the ALJ told him. (R. 248.) The ALJ described a hypothetical individual between the ages of fifty-six and sixty-two with limited education and the same past relevant work as Plaintiff, with an RFC to perform at light work with no more than occasional climbing, no more than frequent balancing, stooping, kneeling, crouching, or crawling, and no overhead reaching with the left arm. The ALJ asked if such a hypothetical individual could perform Plaintiff's past relevant work. (R. 248.) The VE testified that the cannery work and can filling and closing machine tender jobs would be classified as unskilled light work and those jobs would not require any overhead lifting, therefore, the hypothetical individual could perform those jobs. The VE also stated that if the worker was absent more than two days a month, he would probably lose his job. The VE testified that his testimony was consistent with the DOT. (R. 249.)

### D.  The ALJ's Decision

The SSA defines "disabled" as the inability "to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must proceed through a five-step analysis. 20 C.F.R. § 416.920(a-f). At each step, if the ALJ affirmatively finds the claimant disabled or not disabled, the inquiry ends, but if no determination can be made, the Commissioner proceeds to the next step. 20 C.F.R. § 416.920(a)(4). If the claimant is currently employed or was previously employed during the relevant period, he is not disabled. 20 C.F.R. § 416.920(a)(4)(i). The second question is whether the claimant has a severe medical

impairment that will last at least twelve months. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment, the inquiry ends. *Id.* However, if the claimant has a severe impairment, the third step is to ask whether the severe impairment meets or equals one listed in Appendix 1 to subpart P of part 404 of Chapter 20. 20 C.F.R. § 416.920(a)(4)(iii). If it does, the claimant is disabled. *Id.* If it does not, the fourth question is whether claimant is able to perform his past relevant work with his current impairment. 20 C.F.R. § 416.920(a)(4)(iv). If he can, then he is not disabled. *Id.* If he is not able to perform his past work, the fifth and final question is whether, with his current limitations, he can perform other work which exists in significant numbers in the national economy. 20 C.F.R. § 416.920(c)(1).

Here, the ALJ found that Plaintiff had severe impairments including degenerative disc disease of the lower back and degenerative joint disease affecting her left shoulder. The ALJ noted that Plaintiff's occasional anxiety was not severe. The ALJ also found that Plaintiff's impairments did not meet or equal one of the listed impairments and that Plaintiff has the RFC to lift twenty pounds occasionally, ten pounds frequently, walk and stand for six hours in an eight-hour day, and perform occasional climbing, frequent balancing, stooping, kneeling, crouching, and crawling, but no overhead reaching with her left arm. Based on this RFC and the VE's testimony, the ALJ determined that Plaintiff was able to perform her past relevant work as a can filler and closing machine tender, therefore, Plaintiff is not disabled as defined by the Social Security Act.

## II. Standard of Review

The ALJ's decision is subject to review pursuant to 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The United States Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consol. Edison Co. v. New York*, 305 U.S. 197 (1938)). Where conflicting evidence may allow reasonable minds to differ as to whether a claimant is disabled, the responsibility for making that

determination rests with the ALJ. *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996); *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). Therefore, the question for review is not whether the claimant is disabled, but whether substantial evidence in the record supports the ALJ's finding of no disability. *Id.* The Court defers to the ALJ's determinations of credibility, "so long as they find some support in the record." *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir. 1993).

### III.  Discussion

Plaintiff argues that the ALJ's conclusion that Plaintiff retains the RFC to perform her past relevant work is not supported by substantial evidence. She contends that the ALJ's conclusion was based on the state agency RFC assessment and that assessment was based solely on Dr. Raju's consultative exam. Because Dr. Raju's notes failed to mention the July 2000 CT scan of Plaintiff's spine, Plaintiff apparently contends that his exam was flawed and cannot form the basis for the RFC assessment or the ALJ's conclusion.

Contrary to Plaintiff's contention, Dr. Raju expressly stated that he reviewed the radiology reports from July 2000 (CT scan of Plaintiff's lumbar spine), as well as June 2003 (x-ray of Plaintiff's shoulder). Furthermore, the Court notes that Dr. Raju examined Plaintiff in terms of both low back pain and left shoulder pain. He observed that Plaintiff had "[d]ifficulty with heel walk bilaterally due to low back pain" and also observed that Plaintiff is "independent with ambulation without using a cane or walker. (R. 176, 174.) Thus, Dr. Raju had radiology evidence and physical evidence about Plaintiff's back pain, and he stated that his diagnostic impression was the plaintiff had a history of chronic low back pain as well as left shoulder pain. Furthermore, the state agency RFC assessment acknowledged Dr. Raju's observations regarding Plaintiff's difficulty with heel walk and her ability to walk without a cane or walker. Accordingly, the ALJ's conclusion is not improper on the grounds that it was based on the state agency RFC assessment.

Plaintiff also contends that the ALJ's RFC failed to take adequate account of Plaintiff's shoulder impairment. The state agency's RFC assessment noted that Plaintiff's left shoulder

abduction is up to ninety degrees, that is, she could lift her arm up to shoulder level. In addition, the assessment expressly noted that Plaintiff was limited in her ability to reach with her left arm in all directions, including overhead. (R. 189.) Nevertheless, the ALJ stated that Plaintiff could not reach overhead with her left arm. Because the RFC did not include a limitation on Plaintiff's ability to reach in all directions with her left arm, Plaintiff contends that it is inadequate, particularly because the DOT description of the can filler and closing machine tender job includes frequent reaching. (DOT 529.685-282, R. 144.)

In response to Plaintiff's argument, Defendant contends that the medical record supports a limitation on overhead reaching only. Plaintiff first consulted Dr. Halloran about her shoulder in June 2003, complaining of left shoulder pain for about three weeks when she reached in front or behind her back and severe pain when she tried to lift her arm above shoulder level. In September 2003, Plaintiff met with Dr. Raju at the request of the agency. At that time, she assessed her shoulder pain as 2/10. (R. 174.) Defendant refers to Dr. Halloran's diagnosis of bursitis in June 2003 and his note at that time that Plaintiff should return in a week if her symptoms are not improving. As Defendant noted, the record shows that Plaintiff did not return in a week, and in fact, did not see Dr. Halloran until seven months later, in February 2004, at which time she complained only of back and leg pain and did not mention any shoulder problems. Finally, in November 2003, Dr. Shohita, the state agency medical consultant who reviewed Plaintiff's shoulder impairment, noted that this type of impairment (bursitis) is not expected to last for twelve months. (R. 178.) Based on the lack of further medical treatment for her shoulder, Dr. Raju's report that Plaintiff assessed her shoulder pain at 2/10 in September 2003, and the November 2003 opinion of Dr. Shohita that a shoulder condition such as Plaintiff's is not expected to last for twelve months, the Court cannot conclude that the ALJ erred by failing to include limitations on Plaintiff's ability to reach (other than overhead) with her left arm. See 20 C.F.R. § 404.1512 (noting the requirement that an impairment must last at least twelve months).

Plaintiff next contends that she has significant exertional limitations involving standing and walking. Plaintiff contends that those limitations were not identified on the state agency

RFC assessment because the medical reports were not available at that time for review.  Plaintiff notes that she and her husband both testified that she had difficulty with walking and standing and the record shows that she told Dr. Halloran that prolonged standing makes her back hurt worse.  The ALJ did not accept Plaintiff's testimony regarding the extent of her limitations for reasons that he explained in the decision.  (R. 21.)  Plaintiff bears the burden of providing medical evidence that supports her limitations.  *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992) (stating that the claimant bears the burden of establishing that she is disabled under the first four steps of the analysis); 20 C.F.R. § 404.1512 ("In general, you have to prove to us that you are blind or disabled.  Therefore, you must bring to our attention everything that shows that you are blind or disabled.  This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) . . .").
  The only medical evidence in the record related to this issue are Dr. Raju's statements that Plaintiff has difficulty with heel walk bilaterally due to back pain, however, he also expressly observed that Plaintiff is "independent with ambulation without using a cane or walker" (R. 174), and he concluded that Plaintiff had no restrictions "in the work-related activities such as sitting, standing, walking, hearing or speaking" (R. 177).  In the absence of medical evidence that she has difficulty walking and standing for prolonged periods, the Court cannot conclude that the ALJ erred because the RFC failed to include limitations on Plaintiff's ability to walk and stand.

	Next, Plaintiff contends that the ALJ misstated evidence when determining the RFC; specifically, the evidence on (1) Plaintiff's report to Dr. Halloran that she felt fifty percent better after the epidural; (2) Dr. Halloran's opinion that Plaintiff's shoulder pain was caused by bursitis rather than impingement; and (3) the weight that Plaintiff had to lift in her job.  Regarding the first two purported misstatements, the Court has reviewed the record and does not agree with Plaintiff that the ALJ misstated the evidence.  Regarding the weight of the boxes Plaintiff lifted when she worked as a valve dropper, the evidence varies significantly – from twenty-five to thirty pounds, which two people would lift together (R. 100, Report from Plaintiff dated December 2003), to forty or fifty pounds, which Plaintiff sometimes had to move by herself (R. 230, hearing testimony; R. 82, Work History Report dated December 2005).  Given the

conflicting evidence from Plaintiff regarding the weight of the boxes, the Court agrees with Defendant that the record does not clearly establish that Plaintiff cannot perform the lifting requirements of Plaintiff's former job as she performed it. Therefore, the Court cannot conclude that the ALJ erred by determining that Plaintiff was able to perform her past job as valve dropper.

Moreover, assuming arguendo that Plaintiff could not perform her actual past job because of the lifting requirements, the VE testified and the ALJ stated in his decision that Plaintiff was able to perform the job of can filler and closing machine tender as it is *generally performed* in the national economy, as well as the way she actually performed it. *See Orlando v. Sec'y of Health & Human Servs.*, 776 F.2d 209, 215 (7th Cir. 1985). (Stating that a claimant is not disabled if she has the RFC to perform the actual demands of a particular past job *or* the functional demands of a job as generally required by employers in the national economy). Here, the DOT describes the job as light work. (R. 144.) Thus, based on Plaintiff's RFC, she can perform the job as it is generally performed.

Finally, Plaintiff appears to argue that the ALJ erred by relying on Plaintiff's lack of treatment when assessing her credibility. Plaintiff notes that her impairments are degenerative conditions for which "there is no solution except medication or living with the pain" (#13, p. 11), and none of the treatment options have provided sustained relief. The Court disagrees; as noted above, the medical record does not support Plaintiff's testimony at the hearing that the past treatment did not provide sustained relief particularly the epidural. Furthermore, the ALJ reasonably relied on Plaintiff's failure to obtain a second epidural and the infrequency of Plaintiff's visits to Mr. Price when considering Plaintiff's complaints of debilitating pain. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (use of only mild medication and failure to seek treatment undercut claims of disabling pain); *Walker*, 834 F.2d at 644 (claimant's failure to seek more than routine care during six-month period suggests no serious medical problems during that time).

According to the ALJ, Plaintiff has the RFC to lift twenty pounds occasionally, ten pounds frequently, walk and stand for six hours in an eight-hour day, and perform occasional

climbing, frequent balancing, stooping, kneeling, crouching, and crawling, but no overhead reaching with her left arm. He reached this conclusion after determining that Plaintiff's impairments "could reasonably be expected to produce the alleged symptoms, that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (R. 21.) In support, the ALJ noted that

> [Plaintiff has not] routinely treated very intensively for either her back pain or her shoulder pain. She gets by with conservative care including heating pads, over-the-counter pain medications, and the occasional prescription pain medication . . . . Although her treating physician recommended an epidural in September of 2000, the record does not indicate that she ever obtained an epidural steroid injection in her back after that one-time injection. It also appears that the initial injection provided relief to her.
>
> . . . While undoubtedly this [lower back] condition causes the claimant some discomfort, especially with exertion, if she has had the condition for the last 10 years, she has been able to work with this condition. Nothing in the medical evidence record indicates a substantial worsening of the condition, as comparative CAT scans from 2000 and 2004 show no change in the claimant's back condition.
>
> . . . The medical evidence record does show the claimant has had treatment for periodic back and left shoulder pain, but it does not demonstrate that these impairments are severe enough to stop her from her past relevant work. It does not show that she is unable to stand and walk for the necessary eight hours a day, or be able to lift the weight she described in her account of her job to the State disability determination service.

R. 21.

The ALJ is correct that Plaintiff has experienced the back pain for many years. In January 2000, she told Dr. Halloran that her back has hurt for a long time (R. 157.) Consistent with that, Plaintiff earlier reported that her back, leg, and shoulder problems first bothered her in 1960. (R. 75.) During much of this time, that is, up to October 15, 2000, Plaintiff was able to work. From 2000 to 2004, CT scans showed no change in her back, but there are no records available before that. Regarding the shoulder pain, in 2003, Plaintiff told Dr. Halloran that she had it for about three weeks (R. 147), beginning around the end of May 2003, however, she testified at the hearing that she had it for about ten years (R. 223). She apparently did not seek

13

medical care for her shoulder after June 2003, although Dr. Raju noted that she exhibited restricted range of motion in her left shoulder in September 2003.

It is true that Plaintiff has not consulted Dr. Halloran very much for treatment of her back and shoulder conditions. The record includes the following medical treatment: In January 2000, Plaintiff consulted Dr. Halloran about her back; in July 2000, a CT scan of Plaintiff's back indicated severe degenerative disc disease at L4-5; in August 2000, Plaintiff received an epidural steroid injection for her back pain; in September 2000, Plaintiff consulted Dr. Halloran for a check after the epidural and reported that she felt about fifty percent improved. The doctor stated that he would set up another epidural, but this epidural was never performed. In June 2003, Plaintiff consulted Dr. Halloran for shoulder pain. In February 2004, Plaintiff consulted Dr. Halloran complaining of back pain. A subsequent CT scan indicated the same findings as the 2000 CT scan and did not indicate any change compared to 2000. Thus, between 2000 and 2006, Plaintiff consulted Dr. Halloran three times for her back and once for her shoulder and at the time of the hearing, she had not seen him since 2004. In addition, she sees her family doctor about every six months to renew her prescriptions for her high blood pressure, thyroid medication, and Inderal (for tremors). Finally, the ALJ described Plaintiff's treatment for her back and shoulder pain as "conservative," and this is not a mischaracterization. Plaintiff testified that she takes Motrin about every six hours for pain. When the pain is particularly intense, she will lie down and use a heating pad or have her husband massage her.

The Court does not decide whether the claimant is disabled, but whether substantial evidence in the record supports the ALJ's finding of no disability. *Walker*, 834 F.2d at 640. The claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). As the Court noted above, this means that Plaintiff is responsible for providing medical and other evidence that the ALJ could use to reach conclusions about her condition. 20 C.F.R. § 416.912(a); *Bowen*, 482 U.S. at 146 n.5. Here, the evidence in the record supports the RFC determined by the ALJ. Where

conflicting evidence may allow reasonable minds to differ as to whether a claimant is disabled, the Court must defer to the ALJ.  *Books*, 91 F.3d at 977-78.  Accordingly, the Court cannot conclude that the ALJ erred when determining Plaintiff's RFC.

## IV.  Summary

For the reasons set forth above, this Court **DENIES** Plaintiff's Motion for Summary Judgment **(#12)**.

ENTER this 18th day of March, 2008.

                                                                                                             s/ DAVID G. BERNTHAL  
                                                                                                              U.S. MAGISTRATE JUDGE